UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

DEC - 6 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

KARL HAMPTON,

    1250 4th Street, SW
    Unit W511
    Washington, DC 20024

    Plaintiff,

       v.

CHARLES F. CONNER, ACTING
SECRETARY, DEPARTMENT OF
AGRICULTURE,

    1400 Independence Avenue, SW
    Washington, DC 20250

    Defendant.

C.A. No. _____

Case: 1:07-cv-02221
Assigned To : Huvelle, Ellen S.
Assign. Date : 12/6/2007
Description: Employ. Discrim.



## COMPLAINT
### (Race Discrimination and Retaliation in Federal Employment)

    Karl Hampton hereby sues Charles F. Conner, Acting Secretary of the United States

Department of Agriculture, for race discrimination and retaliation in federal employment.

### Jurisdiction

    1. This Court has jurisdiction over this action under Title VII of the Civil Rights Act of 1964,

as amended, 42 U.S.C. § 2000e-16.

### Venue

    2. Venue properly lies in this Court under 28 U.S.C. § 1391(e)(2) and 42 U.S.C. § 2000e-5(f).

The plaintiff was employed in this district, and the discriminatory and retaliatory acts occurred in

this district.

## Exhaustion of Administrative Remedies

3. Plaintiff has exhausted his administrative remedies prior to filing this law suit. Plaintiff filed an administrative formal complaint of discrimination with the Department of Agriculture and litigated that complaint before the Equal Employment Opportunity Commission. The Department of Agriculture issued its final order on October 22, 2007. Plaintiff has filed this suit less than 90 days from his receipt of that final order.

## Parties

4. Plaintiff Karl Hampton, an African American male, is a citizen of the United States and a resident of the District of Columbia. At all times relevant to this suit, he was employed with the Department of Agriculture as a Foreign Service Officer.

5. Defendant is the Acting Secretary of the Department of Agriculture. He is sued in his official capacity only.

## Factual Basis of the Complaint

6. At the time of the events giving rise to this complaint, Plaintiff worked as a Foreign Service Officer for the Foreign Agricultural Service (FAS) of the United States Department of Agriculture.

7. Plaintiff has engaged and participated in equal employment activity since at least 1991 and continuing to the present day. In 1991, for example, Plaintiff participated in a class action alleging race discrimination in promotions and rotations of personnel for assignments in "acting" positions.

8. Plaintiff's equal employment activity participation continued in or about June 1996,

2

when Plaintiff filed a complaint of race discrimination regarding a performance appraisal that did not accurately reflect his true level of performance.

9. From March 2002 through June 2002, Mr. Hampton was detailed to the Executive Office of the President.

10. In April 2002, Dale Miller, who was Plaintiff's first-line supervisor, told Patricia Perkins, Outreach Specialist and Plaintiff's co-worker, that Plaintiff was "acting like a nigger from California, rather than a nigger from Mississippi," referring to Plaintiff's participation in the Executive Development Program and his detail to the Executive Office of the President.

11. In or about June 2003, the Agency began investigating Mr. Hampton's alleged improper use of his government position, submission of travel vouchers, reconciliation of travel voucher, and disclosure of financial interests.

12. In October 2003, Plaintiff discussed the financial disclosure issue with an Ethics Officer and made required adjustments regarding his interest in a particular corporation, Syrisia's Food. The Ethics Officer concluded that Plaintiff had not willfully or knowingly withheld information from the past financial disclosure forms, and that his interest in the corporation did not constitute a conflict of interest. Notwithstanding this, the Agency persisted in its investigation of Plaintiff.

13. In November 2003, FAS sent its Report of Investigation (ROI) to the Department of Agriculture's Office of Inspector General. Despite FAS's attempts to document misconduct by Plaintiff, the Office of Inspector General found that the claims against Mr. Hampton for travel fraud were without basis.

14. On June 30, 2004, Plaintiff filed an EEO complaint filed about the improper

3

investigation of him and the subsequent suspension of his security clearance.

15. On June 30, 2004, FAS requested that Plaintiff's top-secret security clearance be suspended for 45 days. The temporary suspension was supposed to be reviewed after 45-days, which would have been in August 2004, to see whether it should be permanently revoked. However, the review never occurred in August 2004 and Mr. Hampton's security clearance was never reinstated, which was improper.

16. In October 2004, Plaintiff was denied a promotion from FS-03 to FS-02.

17. On October 29, 2004, Plaintiff's formal complaint of discrimination was sent to the Department of Agriculture's Office of Civil Rights. At this point, Plaintiff's complaint included 14 issues, including claims that he was unlawfully denied overseas assignments, that he was improperly audited regarding his travel vouchers, that his security clearance was improperly suspended, and that he was investigated by FAS beginning in August 2003 for alleged misconduct.

18. In November 2004, the FAS denied Plaintiff's mandatory foreign assignment. Under 22 U.S.C. §3984(a), Plaintiff cannot be assigned to duty within the United States for a period exceeding eight years. This rule is known as the eight-year rule. Plaintiff could have received a foreign assignment either at his current grade level or at a higher grade level, but he was given neither.

19. In November 2004, Lyle Sebranek, Deputy Administrator, told Sheila Bruce, Personnel Management Specialist in Human Resources, that Mr. Hampton was not being sent overseas because of his suspended security clearance and his EEO complaint. This demonstrated clear retaliation for Plaintiff's prior protected activity.

4

20. On December 10, 2004, the Department of Agriculture's Civil Rights Employment Complaints Division certified Plaintiff's complaint from October 2004.

21. In January 2005, Plaintiff requested an extension of the eight-year rule for overseas assignments because he had not been selected for a position. His request was not reviewed properly under FAS procedures. Consequently, Plaintiff was denied an extension of the eight-year rule. FAS informed Plaintiff that his request was denied pending the outcome of the investigation of his alleged misconduct, even though the Office of Inspector General had rejected the FAS's findings.

22. On or about January 7, 2005, the FAS Office of Civil Rights notified Mr. Miller, Plaintiff's first-line supervisor, of the Department's certification of the complaint.

23. On or about January 20, 2005, Mr. Miller selected Mr. Hampton for a position as Acting Director for early February 2005.

24. This selection for Acting Director was pretextual, however, because on January 27, 2005, one week later, Mr. Miller proposed Mr. Hampton's termination from federal employment on the basis of alleged misconduct. Mr. Miller was the same individual who had previously referred to Plaintiff as a "nigger from California." Mr. Miller knew that Mr. Hampton would be prevented from serving as Acting Director in February 2005 because he knew that he would place Plaintiff on leave.

25. On the same day, January 27, 2005, Mr. Miller placed Plaintiff on leave with pay. This prevented Plaintiff from serving as an Acting Director in February.

26. On February 8, 2005, Mr. Miller barred Mr. Hampton from the FAS work site without proper cause. This prevented Plaintiff from compiling and submitting his performance

5

file for the September 2005 promotion board.

27. Prior to March 15, 2005, Frank Lee, Deputy Administrator, told Plaintiff that the front office had predetermined that they would terminate Plaintiff's employment regardless of his rebuttal (which had not yet been submitted).

28. On March 15, 2005, Plaintiff presented to Roy Henwood, Director of External Affairs, a written rebuttal to Mr. Miller's proposal to terminate him.

29. On March 18, 2005, Plaintiff presented his oral reply to Mr. Henwood.

30. On May 3, 2005, Mr. Henwood concluded that there was insufficient information to terminate Mr. Hampton. Mr. Henwood requested that Compliance Review Staff ("CRS") undertake an additional investigation even though the Office of Inspector General had already found that there was insufficient basis to discipline Mr. Hampton.

31. On May 18, 2005, Plaintiff voluntarily reimbursed $590.92 to IAB/FMD for his travel prior to January 27, 2005 due to his unintentional error.

32. On July 29, 2005, CRS concluded its investigation. Plaintiff was not given an opportunity to provide rebuttal statements to this investigation. The entire investigation, which took place over more than two years, created a hostile working environment for Plaintiff.

33. In September 2005, although he was still employed by the Agency, Plaintiff was not initially given the opportunity to be considered for promotion by the Promotion Board. Mr. Miller, Plaintiff's supervisor, submitted Plaintiff's performance file for review by the Board without Plaintiff's accomplishment statement and Plaintiff's review of the supervisory assessment. As Plaintiff was banned from the FAS work site at this time, he was unable to properly and effectively complete his package for assessment by the Promotion Board.

34. On September 20, 2005, the Department of Agriculture certified Plaintiff's discrimination complaint regarding 12 claims, including the suspension of his security clearance, the denial of the opportunity to serve as Acting Director, the denial of a promotion and a foreign assignment in 2004, the improper investigation report, the proposed termination and the harassing conduct by Dale Miller.

35. In October and November 2005, Plaintiff was again denied promotion and an overseas assignment.

36. In 2005 and 2006, FAS underwent a reorganization. Despite the reorganization and the reassignment of many other employees, including those in Plaintiff's office, Mr. Miller remained Plaintiff's supervisor. In the past, between approximately 1999 and 2001, Defendant had removed Mr. Miller from being Plaintiff's supervisor due to Plaintiff's complaints of mistreatment by Mr. Miller. Yet, the Defendant permitted Mr. Miller to become Plaintiff's first line supervisor thereafter and did not take action to reassign Plaintiff to another non-discriminatory supervisor.

37. On April 25, 2006, Mr. Henwood, who was no longer in Plaintiff's chain of command and was detailed to a Senate office, recommended Plaintiff's termination.

38. On April 26, 2006, Plaintiff was improperly placed on leave without pay.

39. On May 4, 2006, the Agency notified the Foreign Service Grievance Board (FSGB) of its intention to separate Plaintiff for cause.

40. On January 18-19, 2007, the FSGB conducted a hearing regarding Plaintiff's proposed termination.

41. On April 30, 2007, the FSGB issued a summary initial decision finding that the

7

Agency presented sufficient cause for Plaintiff's separation.

42. On May 1, 2007, prior to the FSGB's final action, the FAS prematurely issued a SF-50 Notice of Personnel Action for Plaintiff's termination from the Department of Agriculture. The SF-50 listed Ruthie Jackson as the Approving Official. However, Ruthie Jackson had retired nearly six months prior, on November 3, 2006. Additionally, the SF-52 Notice of Personnel Action Request was not properly initiated under FAS procedures.

43. The Agency failed to abide by its own regulations, which required Defendant to provide Plaintiff with a final decision from the Secretary informing Plaintiff of the decision that the Department of Agriculture would take regarding the FSGB's decision, when the decision would become effective, the Department's reasons for the decision and Plaintiff's options to appeal the decision. To this day, Plaintiff has not received such notice from the Secretary of the Department.

44. On June 6, 2007, after the SF-50 had already been cut to terminate Mr. Hampton, the FSGB released its final recommendation on Plaintiff's termination.

45. On June 11, 2007, Plaintiff filed a formal complaint of discrimination with the Department of Agriculture alleging that the FAS discriminated and retaliated against him by terminating him.

46. Defendant's stated reasons taking the above actions against Plaintiff are not the true reasons for its actions but instead are a pretext to hide its discriminatory and retaliatory animus. Plaintiff should have been considered for foreign assignments and promotions throughout 2004 through 2007, but was not fairly considered because of his race and his prior equal employment participatory activity.

8

47. So, too, the reasons provided by Defendant for terminating Plaintiff were pretext for discrimination and retaliation. Defendant has failed to follow its own regulations, policies and general practices in relation to Plaintiff's employment and ultimate termination. Defendant deprived Plaintiff of his due process rights and terminated him without legitimate basis. The reasons proffered by Defendant for Plaintiff's termination were false and, in fact, Plaintiff did not commit any misconduct that justified termination.

48. The Defendant's conduct, as specified above, violates Title VII in that Defendant discriminated and retaliated against Plaintiff in the terms and conditions of his employment because of his race and his previously having engaged in protected activity. Because of this violation, Plaintiff has suffered economic injury in that he was denied promotions, foreign assignments, and was ultimately terminated from federal employment. As a result, he lost pay and other benefits. Because of this unlawful retaliation by the Defendant, Plaintiff has suffered and continues to suffer emotional and mental distress, anguish, humiliation, and loss of reputation, all of which have diminished his enjoyment of life and caused him other pain and suffering.

Count One

(Retaliation for Engaging in Protected Activity with Respect to Non-Promotions)

49. The foregoing paragraphs are realleged and incorporated by reference here.

50. Defendant's conduct as alleged above constitutes reprisal against Plaintiff because he engaged in activity protected by Title VII. The stated reasons for Plaintiff's non-promotion from

9

2004-2007 were not the true reasons, but instead were pretexts to hide defendant's retaliatory animus.

## Count Two

### (Race discrimination with Respect to Non-Promotions)

51. The foregoing paragraphs are realleged and incorporated by reference here.

52. Defendant's conduct as alleged above constitutes race discrimination against Plaintiff. The stated reasons for Plaintiff's non-promotion from 2004-2007 were not the true reasons, but instead were pretexts to hide defendant's discriminatory animus.

## Count Three

### (Retaliation for Engaging in Protected Activity with Respect to Termination)

53. The foregoing paragraphs are realleged and incorporated by reference here.

54. Defendant's conduct as alleged above constitutes reprisal against Plaintiff because he engaged in activity protected by Title VII. The stated reasons for Plaintiff's termination were not the true reasons, but instead were pretexts to hide defendant's retaliatory animus.

## Count Four

### (Race Discrimination in Termination)

55. The foregoing paragraphs are realleged and incorporated by reference here.

56. Defendant's conduct as alleged above constitutes racial discrimination against Plaintiff. The stated reasons for Plaintiff's termination were not the true reasons, but instead were pretexts to hide defendant's discriminatory animus.

## Count Five

(Retaliation for Engaging in Protected Activity with Respect to

Non-Selection for Foreign Assignments)

57. The foregoing paragraphs are realleged and incorporated by reference here.

58. Defendant's conduct as alleged above constitutes reprisal against Plaintiff because he

engaged in activity protected by Title VII. The stated reasons for Plaintiff's non-selection for

foreign assignments 2004-2007 were not the true reasons, but instead were pretexts to hide

defendant's retaliatory animus.

## Count Six

(Race Discrimination with Respect to Non-Selection for Foreign Assignments)

59. The foregoing paragraphs are realleged and incorporated by reference here.

60. Defendant's conduct as alleged above constitutes racial discrimination against Plaintiff.

The stated reasons for Plaintiff's non-selection for foreign assignments from 2004-2007 were not

the true reasons, but instead were pretexts to hide defendant's discriminatory animus.

## Count Seven

(Retaliation for Engaging in Protected Activity Created Hostile Work Environment)

61. The foregoing paragraphs are realleged and incorporated by reference here.

62. Defendant's conduct as alleged above constitutes a hostile work environment for Plaintiff

on the basis of retaliation because Plaintiff engaged in activity protected by Title VII. The

Defendant's stated reasons for its actions were pretextual and do not constitute a legitimate non-

retaliatory basis for its actions.

## Count Eight

(Hostile Work Environment Created by Race Discrimination)

11

63. The foregoing paragraphs are realleged and incorporated by reference here.

64. Defendant's conduct as alleged above constitutes a hostile work environment for Plaintiff on the basis of his race. The Defendant's stated reasons for its actions were pretextual and do not constitute a legitimate, non-discriminatory basis for its actions.

### Count Nine

(Retaliation for Engaging in Protected Activity with Respect to Leave Without Pay)

65. The foregoing paragraphs are realleged and incorporated by reference here.

66. Defendant's conduct as alleged above constitutes reprisal against Plaintiff because he engaged in activity protected by Title VII. The stated reasons for Plaintiff's being placed on leave without pay were not the true reasons, but instead were pretexts to hide defendant's retaliatory animus.

### Count Ten

(Race Discrimination with Respect to Leave Without Pay)

67. The foregoing paragraphs are realleged and incorporated by reference here.

68. Defendant's conduct as alleged above constitutes race discrimination against Plaintiff. The stated reasons for Plaintiff's being placed on leave without pay were not the true reasons, but instead were pretexts to hide defendant's discriminatory animus.

### Relief Requested.

WHEREFORE, Plaintiff requests that the Court award him:

1)   Reinstatement to his former position with his choice of foreign assignment, a retroactive promotion to the FS-01/10 level, with all attendant back pay, benefits and other emoluments of employment;

12

2)    compensatory damages in an amount sufficient to compensate for the pecuniary and nonpecuniary injuries he has suffered such as but not limited to emotional distress and pain and suffering;

3)  costs and reasonable attorneys' fees incurred in connection with this lawsuit and the underlying administrative proceedings, and

4)  such other damages and relief as is deemed just.

13

## **JURY DEMAND**

Plaintiff requests trial by jury.

Cathy A. Harris
(467206)
Michael J. Kator
(366936)
KATOR, PARKS & WEISER, PLLC
1020 19th Street, N.W.
Suite 350
Washington, D.C.  20036
(202) 898-4800

Attorneys for Plaintiff

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

| **I (a) PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| KARL HAMPTON<br>1250 4TH Street, SW, Unit W511<br>Washington, DC 20024       *110 d/* | CHARLES F. CONNER, ACTING SECRETARY<br>DEPARTMENT OF AGRICULTURE<br>1400 Independence Avenue, SW<br>Washington, DC 20250 |

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**   DC
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY) ————
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Cathy A. Harris
Michael J. Kator
KATOR, PARKS & WEISER, PLLC
1020 19TH Street, NW #350
Washington, DC 20036
(202) 898-4800

Case: 1:07-cv-02221
Assigned To : Huvelle, Ellen S.
Assign. Date : 12/6/2007
Description: Employ. Discrim.

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

O 1 U.S. Government
Plaintiff

O 3 Federal Question
(U.S. Government Not a Party)

⊘ 2 U.S. Government
Defendant

O 4 Diversity
(Indicate Citizenship of
Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place<br>of Business in This State | O 4 | O 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place<br>of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a<br>Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

**IV.  CASE ASSIGNMENT AND NATURE OF SUIT**
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

| O A. *Antitrust* | O B. *Personal Injury/ Malpractice* | O C. *Administrative Agency Review* | O D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If<br>    Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| O E. *General Civil (Other)*  OR  O F. *Pro Se General Civil* | | |
|---|---|---|
| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or<br>    defendant<br>☐ 871 IRS-Third Party 26<br>    USC  7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure<br>    of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational<br>    Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC<br>    Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced &<br>    Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/<br>    Exchange<br>☐ 875 Customer Challenge 12 USC<br>    3410<br>☐ 900 Appeal of fee determination<br>    under equal access to Justice<br>☐ 950 Constitutionality of State<br>    Statutes<br>☐ 890 Other Statutory Actions (if<br>    not administrative agency<br>    review or Privacy Act |

*(3)*

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Title VII of the Civil Rights Act of 1964, as amended 42 USC 2000e16; 28 USC 1391(e)(2) and 42 USC 2000e-5(f)

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ $300,000.00 | Check YES only if demanded in complain |
|---|---|---|---|
| | | JURY DEMAND: | YES ☒ NO ☐ |

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE 12/06/2007    SIGNATURE OF ATTORNEY OF RECORD    *Cathy A. Harris*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.