UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

| | )<br>) | |
|---|---|---|
| **KARL HAMPTON,** | )<br>) | |
| Plaintiff, | )<br>) | |
| v. | ) | Civil Action No. 07-2221 (ESH) |
| | ) | |
| **TOM VILSACK,** Secretary,<br>United States Department of Agriculture, | )<br>)<br>) | |
| Defendant. | )<br>) | |

---

## MEMORANDUM OPINION

Plaintiff Karl Hampton was terminated from his position as a Foreign Service Officer for the U.S. Department of Agriculture ("USDA") and filed suit against his former employer, claiming numerous violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. In a Memorandum Opinion issued on January 13, 2011, the Court granted defendant's motion for summary judgment and dismissed all but one of plaintiff's original ten counts. Before the Court is plaintiff's motion for reconsideration. As explained herein, the Court will deny the motion, since it finds that the Supreme Court's recent decision in *Staub v. Proctor Hospital*, 131 S. Ct. 1186 (2011), does not necessitate reconsideration of this Court's prior opinion.

## BACKGROUND

Plaintiff is an African-American male who was terminated for cause from his position as a Foreign Service Officer with the USDA following allegations that he had submitted altered hotel receipts for reimbursement.[1] Plaintiff filed a ten-court complaint on December 6, 2007,

---

[1] The factual background of this case is detailed in the Court's prior Memorandum Opinion. *See Hampton v. Vilsack*, No. 07-2221, 2011 U.S. Dist. LEXIS 3176, at *1-10 (D.D.C. Jan. 13, 2011).

alleging discrimination on the basis of his race, retaliation for engaging in protected activity, and a hostile work environment in violation of Title VII. (*See generally* Compl. [Dkt. No. 1].) Defendant moved for summary judgment on July 21, 2010, and on January 13, 2011, the Court granted defendant's motion for summary judgment and dismissed all nine of plaintiff's ten counts. Trial has been set for August 2, 2011, on the sole remaining count, Count Five, which alleges that USDA retaliated against plaintiff by denying him a foreign assignment.[2]

On March 1, 2011, the Supreme Court issued its decision in *Staub v. Proctor Hospital*, 131 S. Ct. 1186, which addressed the question of when an employer may be held liable in "cat's paw" situations under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). On April 4, 2011, plaintiff filed a "Motion for Reconsideration,"[3] claiming that *Staub* constitutes an intervening change of controlling law that "calls into serious question the correctness of this Court's judgment in granting in part Defendant's Motion for Summary Judgment." (Plaintiff's Motion for Reconsideration ["Mot."] at 4.)

## ANALYSIS

**I.   LEGAL STANDARD**

   **A.   Rule 60(b)(1)**

Rule 60(b)(1) provides in pertinent part: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . ." Fed. R. Civ. P. 60(b)(1). The D.C. Circuit has stated that a court may reconsider an order which was

---

[2] The parties have recently advised the Court that they have reached a settlement as to Count Five.

[3] Because plaintiff's motion asks the court to reconsider its January 13, 2011 Memorandum Opinion, the Court construes plaintiff's motion as a motion for relief from a judgment under Rule 60(b).

inconsistent with an intervening decision of controlling law pursuant to Rule 60(b)(1). *See D.C. Federation of Civic Ass'ns v. Volpe*, 520 F.2d 451, 453 (D.C. Cir. 1975). "[A] district court enjoys significant discretion in deciding whether to grant or deny a Rule 60(b) motion." *Computer Prof'ls for Soc. Responsibility v. U.S. Secret Serv.*, 72 F.3d 897, 903 (D.C. Cir. 1996).

    **B.**    *Staub v. Proctor Hospital*

In *Staub*, an employee of Proctor Hospital was a member of the United States Army Reserve. 131 S. Ct. at 1189. Both his immediate supervisor and his supervisor's supervisor were hostile to his military obligations and fabricated allegations against him, causing the hospital's Vice President of Human Resources to fire him upon reviewing his personnel file. *Id.* at 1190. Staub sued Proctor under the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), which forbids an employer to deny "employment, reemployment, retention in employment, promotion, or any benefit of employment" based on a person's "membership" in or "obligation to perform service in a uniformed service," and provides that liability is established "if the person's membership . . . is a motivating factor in the employer's action." *Id.* (quoting 38 U.S.C. § 4311(a), (c)). Staub contended not that the ultimate decisionmaker was motivated by hostility to his military obligations, but that his immediate supervisors were, and that their actions influenced the vice-president's decision. *Id.* A jury found Proctor liable and awarded damages, but the Seventh Circuit reversed, holding that Proctor was entitled to judgment as a matter of law because he had brought a "cat's paw" case, and the decisionmaker had relied on more than the supervisors' advice in making her decision.[4] *Id.*

---

[4] "The term 'cat's paw' derives from a fable conceived by Aesop, put into verse by La Fontaine in 1679, and injected into United States employment discrimination law by [Judge Richard] Posner in 1990. In the fable, a monkey induces a cat by flattery to extract roasting chestnuts from the fire. After the cat has done so, burning its paws in the process, the monkey makes off with the chestnuts and leaves the cat with nothing." *Id*. at 1190 n.1 (citation omitted). The term refers to cases where a plaintiff seeks "to hold his employer liable for the animus of a supervisor

3

The Supreme Court reversed, holding that "if a supervisor performs an act motivated by antimilitary animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under USERRA." *Id.* at 1194. "So long as an agent intends, for discriminatory reasons, that the adverse action occur, he has the scienter required to be liable under USERRA." *Id.* at 1192. In addition, the Supreme Court held that the exercise of independent judgment by the ultimate decisionmaker "does not prevent the earlier agent's action (and hence the earlier agent's discriminatory animus) from being the proximate cause of the harm. Proximate cause requires only 'some direct relation between the injury asserted and the injurious conduct alleged,' and excludes only those 'link[s] that are too remote, purely contingent, or indirect.'" *Id.* (quoting *Hemi Group, LLC v. City of New York*, 130 S. Ct. 983 (2010)).

## II. PLAINTIFF'S MOTION FOR RECONSIDERATION

Plaintiff reasserts his earlier claim that Dale Miller, plaintiff's first-line supervisor, harbored discriminatory animus towards him and took active steps to have him fired for discriminatory reasons. (Mot. at 4-5.) Mr. Hampton now argues that the Court should reverse its ruling in light of *Staub*,[5] because, in his view, the Court improperly "stated on numerous occasions that the reason for its decision was because Miller was not the deciding official for the adverse actions taken against Plaintiff." (Mot. at 7.)

---

who was not charged with making the ultimate employment decision." *Id*. at 1190 (citation omitted).

[5] Although *Staub* did not address the effect of its ruling on Title VII, the Supreme Court explicitly noted that USERRA is "very similar to Title VII," *Id.* at 1191. The Court will assume that *Staub* applies to Title VII cases, but it still finds no basis for reversal of its prior opinion.

4

The Court rejects this invitation to revisit its earlier ruling. Plaintiff expends a great deal of effort repeating[6] many of the arguments from his original opposition—namely, that Miller harbored discriminatory animus against plaintiff, and that "Miller's discriminatory animus tainted all of the adverse actions taken against him." (Mot. at 5-6.) The Court, however, considered and rejected these arguments in its earlier opinion, explicitly holding that "Miller's racially-tinged remarks—the most recent of which allegedly occurred more than a year before, outside plaintiff's presence, and had no relation to any alleged misconduct by plaintiff" did *not* "automatically taint any and all actions taken by Miller from that date forward." *Hampton*, 2011 U.S. Dist. LEXIS 3176, at *16. Plaintiff's instant motion merely repeats his prior arguments on this point, and he fails to cite any reason to disturb the Court's earlier ruling. A motion for reconsideration "is not simply an opportunity to reargue facts and theories upon which a court has already ruled." *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995) (discussing motion to reconsider in analogous context of Rule 59(e)).

As to plaintiff's *Staub* argument, Mr. Hampton is simply incorrect when he asserts that "the reason for [the Court's] earlier decision was because Miller was not the deciding official" or that the Court "reli[ed] . . . on the fact that Miller was not the ultimate decisionmaker." (Mot. at 7.) In discussing plaintiff's non-promotion and non-selection for foreign assignment claims (Courts One, Two, Five and Six), the Court noted as a factual matter that Miller had no role in the ultimate decision to terminate plaintiff. This fact was not, however, the "reason" for the Court's decision. Rather, the Court held that plaintiff had failed raise a material dispute of fact as to whether USDA's proffered reason for terminating plaintiff (namely, that plaintiff was found

---

[6] Indeed, plaintiff admits that he is merely restating his prior arguments on this point. (*See* Mot. at 5-6 (quoting Plaintiff's Opposition to Defendant's Motion for Summary Judgment ["Pl.'s Summ. J. Opp."] at 3-9).)

to have submitted falsified reimbursement requests) was pretextual. *See Hampton*, 2011 U.S. Dist. LEXIS 3176, at *14-21. Plaintiff previously advanced the same theory as he argues now: that stray remarks made by his supervisor more than a year prior automatically tainted all subsequent actions taken by Miller. (*See* Mot. at 5-6; Pl.'s Summ. J. Opp. at 22.) The Court rejected this theory. *Hampton*, 2011 U.S. Dist. LEXIS 3176, at *16. *Staub*'s holding that "if a supervisor performs an act *motivated by [improper] animus* that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable," 131 S. Ct. at 1192 (emphasis added), is therefore inapposite, as the Court held that plaintiff failed to raise a material dispute of fact that defendant's actions were motivated by discriminatory animus at all.[7] *Hampton*, 2011 U.S. Dist. LEXIS 3176, at *16.

Plaintiff's *Staub* argument is arguably more appropriate in the context of the Court's discussion of his leave-without-pay and termination claims (Counts Two, Three, Nine and Ten). Plaintiff argued that because Henwood (a political appointee who made the ultimate determination to terminate plaintiff) did not sustain two of the six charges against plaintiff, "a reasonable fact-finder would almost have to conclude that the allegation[s] w[ere] pretext for discrimination and retaliation." (Pl.'s Summ. J. Opp. at 30-31; *Hampton*, 2011 U.S. Dist. LEXIS 3176, at *21.) In response, the Court noted that "plaintiff's invocation of Miller is irrelevant to the issue of plaintiff's leave-without-pay status and termination, because Henwood—not Miller—was the deciding official." *Hampton*, 2011 U.S. Dist. LEXIS 3176, at *22. Contrary to plaintiff's assertion, however, these facts are readily distinguishable from those in *Staub*. While

---

[7] These facts stand in sharp contrast to those in *Staub*, where the plaintiff had presented clear evidence that his supervisors were actively trying to get him fired because of their discriminatory animus toward his military obligations. *Staub*, 131 S. Ct. at 1189-90.

*Staub* held that an independent investigation does not automatically "prevent an earlier agent's action (and hence the earlier agent's discriminatory animus) from being the proximate cause of the harm," *Staub*, 131 S. Ct. at 1192, plaintiff here has failed to establish that Miller was the proximate cause of his termination. The supervisors in *Staub* ordered plaintiff to comply with a non-existent company rule, falsely accused him of having violated this rule, and then used plaintiff's "violation" to get him fired. Here, Miller's actions toward plaintiff were far more limited. As the Court previously explained:

> While Miller, plaintiff's first-line supervisor, officially "initiated" the investigations into his conduct, the investigations were triggered as a result of *other individuals* reporting this conduct to Miller. For example, the investigation into plaintiff's hotel reimbursement requests was triggered when Christine Lipscomb noted handwritten changes to plaintiff's hotel bills and concluded that plaintiff's receipts had been altered in some fashion.

*Hampton*, 2011 U.S. Dist. LEXIS 3176, at *15-16 (citations omitted). After being presented with evidence of the altered receipts, Miller took the documents to his immediate supervisor, Henwood, and asked him what he suggested should be done. (Defendant's Motion for Summary Judgment Ex. 3 at 178-79.) After conferring with Henwood, Miller took the documents to the compliance review staff (CRS) for investigation. (*Id.*) The CRS investigation concluded that the document Ms. Lipscomb had first shown to Miller was just the tip of the iceberg, and that numerous hotel bills submitted by plaintiff had been altered to increase the reimbursement amount supposedly owed. *See Hampton*, 2011 U.S. Dist. LEXIS 3176, at *5.[8] The results of the investigation into plaintiff's hotel reimbursement requests were ultimately forwarded to Lacy Muir, a USDA employee relations specialist. *Id.* at *7. After examining the results of the

---

[8] Moreover, subsequent investigation requested by Henwood revealed that plaintiff had threatened one of the hotel managers in order to prevent the manager from cooperating with the investigation. (*Id*. at *9.)

7

investigation, Muir believed that plaintiff should be terminated and drafted a proposal of removal that was ultimately signed by Miller. *Id.* Miller's limited actions were therefore "too remote, purely contingent, or indirect" to constitute the proximate cause of the harm to plaintiff. *See Staub*, 131 S. Ct. at 1192 (quoting *Hemi Group*, 130 S. Ct. at 989).

In addition, faced with a voluminous record establishing that plaintiff was placed on leave-without-pay and ultimately terminated because USDA had concluded that he submitted falsified travel reimbursements (and then tried to obstruct the investigation), the Court held that plaintiff had failed to raise material facts that would rebut this explanation. *Hampton*, 2011 U.S. Dist. LEXIS 3176, at *21-23. In so doing, the Court specifically held that Henwood's failure to sustain two of the six allegations against plaintiff was not evidence that the decision to uphold the remaining charges was pretextual. *Id.* at *21-22. While a trier of fact can infer pretext of discriminatory intent where a defendant's explanation for its actions is ultimately determined to be false, *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 147 (2000), the withdrawn charges against plaintiff were, by definition, not USDA's proffered reason for terminating plaintiff. *Hampton*, 2011 U.S. Dist. LEXIS 3176, at *22.

## CONCLUSION

For the foregoing reasons, the Court denies plaintiff's motion for reconsideration. A separate order accompanies this Memorandum Opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date: June 14, 2011